**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELPHIA RAY, | Case No. 1:14-cv-01039-EPG |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**I. INTRODUCTION**

Plaintiff Delphia Ray ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Erica P. Grosjean.[1]  Upon a review of the entire record, the Court finds the ALJ's decision is proper and is supported by substantial evidence in the record. Accordingly, this Court denies Plaintiff's appeal and remands the case for further administrative proceedings.

---

[1] The parties consented to the jurisdiction of the Magistrate Judge. (Docs. 7 and 8).

1

## II. BACKGROUND AND PRIOR PROCEEDINGS[2]

In October 2011, Plaintiff filed applications for DIB and SSI alleging disability beginning February 21, 2010. AR 266-281. Plaintiff's applications were denied initially and on reconsideration. AR 186-190, 199-204. Subsequently, ALJ Sharon L. Madsen held a hearing on December 12, 2013 (AR 29-54), and issued an order denying benefits on December 20, 2013. AR 11-28. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. AR 4-7

Plaintiff now challenges that decision, arguing that the ALJ: (1) improperly gave less weight to Dr. Michiel's March 2013 consultative examining opinion, and (2) failed to provide sufficient reasoning for discrediting Plaintiff's subjective complaints. Defendant argues that the ALJ provided specific and legitimate reasons to give less weight to Dr. Michiel's second psychiatric evaluation. Specifically, the second evaluation is internally inconsistent and is contradicted by Dr. Funkenstein's non-examining evaluation. Additionally, Defendant argues that the ALJ properly rejected Plaintiff's credibility.

### A. Medical Record

The medical evidence that relates to the issues raised in this appeal is summarized below.

#### i. *Community Medical Centers*

Plaintiff received treatment at Community Medical Centers ("CMC") between May 2010 and October 2013. AR 382-646. During this period Plaintiff was admitted into Community Regional Medical Center ("CRMC') and received treatment in the Emergency Department ("ED") and Ambulatory Clinic. On May 31, 2010, Plaintiff was admitted into CRMC. AR 382. She reported chest pain, depression, and thoughts of suicidal ideation. AR 382. In addition, there was significant joint effusion and swelling in Plaintiff's left knee. AR 423. Plaintiff was placed on a 5150 psychiatric hold and admitted to an inpatient psychiatric ward. AR 382. Plaintiff was diagnosed with hypertension, hyperlipidemia, coronary artery disease, status post drug-eluting stent, chest pain, and acute coronary syndrome. AR 382. During a psychiatric evaluation, Plaintiff reported a history of marijuana and cocaine use. AR 397. Prior to her hospitalization, Plaintiff stated she had been

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

"smoking nonstop" for five days. AR 397. Plaintiff was further diagnosed with multifactorial depression, polysubstance abuse, and suicidal ideation with a history of multiple prior suicide attempts. AR 399. Plaintiff was discharged on June 3, 2010. AR 382.

In June and November 2011, Plaintiff was examined at the Ambulatory Clinic for knee and back pain. AR 430-433. Plaintiff stated that she had been taking Vicodin up to four times a day with minimal relief. AR 433. Plaintiff was diagnosed with arthritis, hypertension, coronary artery disease, anxiety, and insomnia. AR 435-436. X-rays revealed possible joint effusion and acute bony findings in Plaintiff's left knee, and mild scoliosis with no significant degenerative changes in Plaintiff's back. AR 424-425. In December 2011, Plaintiff was examined in the ED and reported shortness of breath and trouble sleeping. AR 436. An ED physician noted that Plaintiff was unable to ambulate and was extremely dyspneic with mild hypoxia. AR 439. She was diagnosed with pneumonia and hospitalized for two days. AR 443. In subsequent visits to the ED, Plaintiff presented with respiratory dyspnea, knee pain, shortness of breath and chest pain. AR 445, 448, 502.

On February 14, 2013, Dr. Vempilly examined Plaintiff's lungs and performed a pulmonary function test. AR 505. A few days later, Plaintiff was treated in the ED for shortness of breath, and chest and back pain. AR 507. Plaintiff was diagnosed with dyspnea, anxiety, coronary artery disease, status post stenting, asthma, chronic obstructive pulmonary disease ("COPD"), depression, chronic back pain, and osteoarthritis of the knee. AR 516. On May 27, 2013, Plaintiff was placed on a 5150 psychiatric hold for being a danger to herself and was taken to the ED for chest pain. AR 533-534. She was diagnosed with chest pain, angina, and agitation. AR 538. In June 2013, Plaintiff entered a Chronic Lung Disease Program at CMC. AR 541. Subsequently, a physician noted that Plaintiff's clinical findings were consistent with a fixed extrathoracic airway obstruction by the flow volume loop. AR 544.

### ii. *Consultative Examiners*

On July 9, 2011, Steven Stoltz, M.D., an internal medicine specialist, examined Plaintiff. AR 348-353. Dr. Stoltz reviewed Plaintiff's medical records and conducted an internal medical examination. AR 348-350. Dr. Stoltz noted that Plaintiff's lumber spine, thoracic spine, and left

knee had a good range of motion with no noted abnormalities.  AR 353.  Dr. Stoltz opined that Plaintiff did not have any limitations.  AR 353.

On July 23, 2011, Ekram Michiel, M.D., examined Plaintiff and performed a psychiatric evaluation.  AR 357-460.  Plaintiff stated that she became depressed when she had a heart attack.  She further reported that her depression became severe after the death of her mother.  Plaintiff also indicated that she had trouble sleeping, experiences severe back and knee pain, and had been admitted to a mental hospital three times.  AR 357.  Dr. Michiel opined that Plaintiff was oriented to person, place and date, had a below average fund of knowledge, and was able to do simple math calculations. AR 359.  In addition, Plaintiff's attention, concentration, and judgment were intact.  AR 359.  However, Plaintiff's immediate recall was impaired and her short-term memory was fair.  Moreover, Plaintiff's long-term memory was fair and her abstract thinking was concrete.  AR 359.  Dr. Michiel diagnosed Plaintiff with cannabis dependence, depressive disorder not otherwise specified, coronary artery disease, chronic pain, hyperlipidemia, migraine headaches, and uncomplicated bereavement superimposed on depressive disorder.  AR 359.  Dr. Michiel concluded that Plaintiff is able to maintain the attention and concentration necessary to carry out simple job instructions.  AR 359.  He further found that Plaintiff could relate and interact with coworkers, supervisors, and the general public.  Dr. Michiel also opined that Plaintiff could not carry out complex instructions and is unable to handle her own funds.  AR 359-360.

Dr. Michiel performed a second psychiatric evaluation on March 29, 2013.  AR 375-378.  Upon examination, Plaintiff's mood was depressed, her affect was intense and tearful, and her thought process was goal-directed with blocking.  AR 376-377.  Dr. Michiel opined that Plaintiff was oriented to person, place, and date, had a below average fund of knowledge, and appeared able to do simple math calculations.  AR 377.  In evaluating Plaintiff's attention and concentration, Dr. Michiel noted that Plaintiff, "was able to do digit span five out of five forward and three backwards correctly, after [Dr. Michiel] had repeated the digits twice."  AR 377.  In evaluating Plaintiff's immediate recall, Dr. Michiel noted that Plaintiff "was able to recall one out of three items after five minutes.  She recalled a second item with multiple choice."  AR 377.  Dr. Michiel further noted that Plaintiff's abstract thinking was not concrete.  AR 377.  Dr. Michiel concluded that Plaintiff is

4

unable to maintain the attention and concentration necessary to carry out simple job instructions, and is unable to relate and interact with coworkers, supervisors, and the general public. AR 377-378. Dr. Michiel also found that Plaintiff is able to handle her own funds. AR 378.

In May 2013, Rustom Damania, M.D., an internal medicine specialist, examined Plaintiff. AR 366-371. Dr. Damania diagnosed Plaintiff with coronary artery disease with one stent placement, bronchial asthma, and back pain. AR 370. Dr. Damania concluded that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk for six hours out of an eight-hour workday with normal breaks; sit for six hours out of an eight-hour workday; and ambulate without assistance. AR 370. Moreover, Dr. Damania opined that it was not necessary to impose any postural or manipulative limitations. AR 370.

### iii. State Agency Medical Consultant Opinions

In April 2013, E. Murrillo, M.D reviewed Plaintiff's medical record and opined that Dr. Michiel's two medical reports contained similar findings. AR 140-142. Dr. Murrillo concluded that Plaintiff retained the ability to complete simple routine tasks with limited public contact. AR 141.

On July 9, 2013, Dr. Funkenstein, M.D., reviewed the medical evidence and concluded that Plaintiff was capable of performing simple repetitive tasks with limited public contact. AR 178. Dr. Funkenstein also opined that Plaintiff has memory limitations. In addition, Dr. Funkenstein found that Plaintiff's ability to maintain attention and concentration for extended periods of time was not significantly limited. AR 179.

### B. Plaintiff's Testimony

Plaintiff was 52 years old at the time of the hearing. AR 32. She does not drive and has an eleventh grade education. AR 33-34. She does household chores, shops for groceries, attends church, and watches TV. AR 35-36. However, Plaintiff struggles to stand for long periods of time. AR 35. Plaintiff previously worked as a caregiver for her mother. AR 37. She has scoliosis and experiences severe back pain. AR 38. She takes pain medication, but the medication makes her drowsy. AR 38. Plaintiff also has rheumatoid arthritis in both knees. AR 39. Her knees hurt constantly and are often swollen. AR 40. Plaintiff had a stent placed in her heart a couple of years ago. AR 40. In addition, Plaintiff has asthma, and experiences chest pain and shortness of breath.

5

AR 41.  She sees a specialist at CRMC for her breathing problems.  AR 41.  Plaintiff uses marijuana and used cocaine until 2010.  AR 42-43, 48.  She can lift and carry ten pounds, and is able to stand for twenty minutes.  AR 43-44.  Plaintiff struggles to walk long distances and is unable to climb stairs.  AR 44-45.  Plaintiff is depressed, gets anxious around people, has trouble sleeping, and hallucinates.  AR 45, 47.

### III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a), 416.920(a).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The ALJ must consider objective medical evidence and opinion testimony.  20 C.F.R. §§ 404.1513, 416.913.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;  (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work;  and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

///

**A. The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 15-24. More particularly, the ALJ found that Plaintiff met the insured status requirements through June 30, 2016, and that she had not engaged in any substantial gainful activity since February 21, 2011, the alleged disability onset date. AR 16. Further, the ALJ identified coronary artery disease, status post stenting, lumbar scoliosis, asthma, depression, anxiety, and cannabis abuse as severe impairments. AR 16. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 17.

Based on her review of the entire record, the ALJ determined Plaintiff's residual functional capacity ("RFC") and imposed the following limitations:

> The claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and sit, stand and walk 6-8 hours in an 8 hour workday. She is able to occasionally stoop, crouch, crawl, climb and kneel. The claimant should avoid concentrated exposure to dust, gases and fumes. She is capable of performing simple, routine tasks, with occasional public contact.

AR 18.

After considering the testimony of a vocational expert, the ALJ determined that Plaintiff could not perform any past relevant work. AR 22. She also determined Plaintiff could perform jobs that exist in significant numbers in the national economy, including packing line worker, garment sorter, and ampoule filler. AR 23. As a result, Plaintiff was not disabled under the Social Security Act. AR 24.

**IV. SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the

correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

**V. DISCUSSION**

### A. The ALJ's Assessment of the Medical Opinions Regarding Plaintiff's Mental Impairments is Supported by Substantial Evidence.

#### *i. The ALJ's Findings*

When evaluating Plaintiff's mental impairments and the doctors' opinion evidence, the ALJ states as follows:

> Dr. Michiel conducted two detailed psychiatric evaluations of the claimant. I give greater weight to the opinion in the first examination, limiting the claimant to simple repetitive tasks. The second evaluation is internally inconsistent. The doctor finds the claimant able to perform some digit span testing, yet said she was unable to maintain attention and concentration to carry out simple job instructions. This is unsupported by his testing. However, I have included limited public contact based upon the second assessment, as well as the evidence showing anger issues, and my observations of her during the hearing. The opinion of State agency physician Dr. Funkenstein is given great weight. The limitations noted by the doctor are well supported, with specific references to medical evidence. The opinion is internally consistent as well as consistent with the evidence as a whole.

AR 21 (citations omitted)

#### *ii. Legal Standard for Medical Opinions*

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Holohan v. Massanari*, 246 F.3d 1195, 1201; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Generally, the opinion of a treating physician is afforded the greatest weight. *Id.* Similarly, the opinion of an examining physician is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). However, the opinions of a treating or examining physician are "not

necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas*, 278 F.3d at 956–57; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). For example, the ALJ may reject the opinion of an examining physician in favor of a conflicting opinion of another examining or treating physician if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation and internal quotation marks omitted). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation and internal quotation marks omitted).

However, "the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan*, 169 F.3d at 602 (citations omitted). The opinions of non-examining physicians may serve as substantial evidence when the opinions are "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Such independent reasons may include laboratory test results or contrary reports from examining physicians, and plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes*, 881 F.2d at 751-55).

### iii. Analysis

There is no dispute regarding the content of the medical records, or the doctors' opinions. Instead, the parties are disputing the weight that the ALJ accorded the physicians' opinions, and the interpretation of the medical record. As noted above, the ALJ rejected Dr. Michiel's 2013 opinion because it was inconsistent and contradicted Dr. Funkenstein's non-examining medical opinion.

1    Specifically, the ALJ noted that Plaintiff "was able to perform some digit span testing, yet [Dr.
2    Michiel opined that Plaintiff] was unable to maintain attention and concentration to carry out simple
3    job instructions." AR 21.  The ALJ found that Dr. Michiel's conclusion during his second evaluation
4    was not supported by the testing. As a result, the ALJ relied on Dr. Funkenstein's findings and Dr.
5    Michiel's 2011 opinion.  AR 21.

6          Plaintiff argues that the ALJ's reasoning is improper because Dr. Michiel's 2013
7    examination was not internally inconsistent.  Moreover, Plaintiff argues that Dr. Funkenstein
8    reviewed the same clinical findings as Dr. Michiel, and therefore the ALJ's reliance on Dr.
9    Funkenstein's non-examining medical opinion does not constitute substantial evidence for rejecting
10   Dr. Michiel's 2013 medical opinion. (Doc. 14, p. 5-7).  The Court agrees that Dr. Michiel's 2013
11   report is not necessarily internally inconsistent (i.e., could be read to be consistent).
12   Notwithstanding, the ALJ's reliance of Dr. Funkerstein's opinion was not in error.

13         Here, there are conflicting medical opinions, so the ALJ is required to provide specific and
14   legitimate reasons in order to reject Dr. Michiel's second evaluation. *Lester*, 81 F.3d at 830.
15   Although the ALJ gave a specific reason for rejecting Dr. Michiel's second medical opinion, namely
16   that the evaluation was internally inconsistent, a review of the medical records reveals that Dr.
17   Michiel's conclusions in his second evaluation were not necessarily inconsistent with the testing.
18   For example, the examination revealed that Plaintiff did have difficulty completing the digit span
19   test.  In particular, Plaintiff "was able to do digit span five out of five forward and three backwards
20   correctly, but only after [Dr. Michiel] had repeated the digits twice." AR 377. In addition, when
21   evaluating Plaintiff's immediate recall, Dr. Michiel noted that Plaintiff could only recall one out of
22   three items after five minutes.  She eventually recalled a second item, but did so only after being
23   provided with a multiple choice prompt.  AR 377.  Dr. Michiel also noted that Plaintiff's abstract
24   thinking was not concrete and that her affect was depressed, tearful, and intense. AR 376, 377.
25   Although, the ALJ may disagree with Dr. Michiel's conclusion that Plaintiff could not do simple
26   tasks based on these tests, there is not necessarily an inconsistency between those findings and Dr.
27   Michiel's conclusion that Plaintiff was unable to maintain attention and concentration to carry out
28

simple job instructions because Plaintiff did exhibit some symptomatology and deficits during the testing. However, the analysis does not end there.

Plaintiff correctly notes that the ALJ is not a medical doctor and she may not substitute a doctor's findings with her own opinions. *Tackett v. Apfel*, 180 F.3d 1094, 1102-1103 (9th Cir. 1999). Therefore, in order to legitimately reject Dr. Michiel's second report on this basis, the ALJ must rely on another doctor's opinion. The ALJ gave Dr. Funkenstein's opinion great weight because the limitations noted by the doctor were: 1) well supported by the medical evidence, 2) internally consistent, and 3) consistent with the medical record as a whole. AR 21. Based on Dr. Funkenstein's limitations, the ALJ determined that Plaintiff could perform simple repetitive tasks with limited public contact.

A review of Dr. Funkenstein's report reveals that the ALJ's reasons for giving Dr. Michiel's second medical opinion reduced weight were legitimate and based on substantial evidence in the record. For example, Dr. Funkenstein rejected Dr. Michiel's 2013 assessment because: (1) the opinion relied on the subjective report of symptoms and limitations provided by Plaintiff which did not match the totality of the evidence; (2) the opinion contains inconsistencies; (3) it relies on an assessment for which the examiner did not treat Plaintiff; and (4) the opinion is an overestimate[3] of Plaintiff's restrictions and was based on a snapshot of Plaintiff's functioning. AR 174, 180, 181.

While the Court does not find the third or fourth reasons particularly persuasive, the first reason, that the assessment was based on Plaintiff's subjective report and the totality of the record does not support Dr. Michiel's conclusion, is a specific and legitimate reason for rejecting the opinion. AR 181. Specifically, the record contained information that Plaintiff had many somatic physical complaints with symptoms and limitations that were out of proportion to the clinical objective evidence, and that this exaggeration of her physical impairments made her psychological complaints less credible. AR 174, 176. Because Dr. Michiel's psychiatric report was largely based on Plaintiff's subjective complaints, Dr. Funkenstein's opinion questioned the reliability and

---

[3] The Court notes that on page 180 of the administrative record, Dr. Funkenstein stated that the consultative examiner's opinion is an underestimate of the severity of the individual's restrictions. However, on page 181, Dr. Funkenstein opined that the consultative examiner's opinion is an overestimate of the individual's restrictions. It appears Dr. Funkenstein's note on page 180 is a typographical error.

consistency of Dr. Michiel's second psychiatric evaluation. As a result, Dr. Funkenstein rejected Dr. Michiel's 2013 opinion, and gave the 2011 opinion greater weight. AR 176, 180. Moreover, the evidence that Dr. Funkenstein considered in questioning Plaintiff's credibility was information in the administrative record that was not available to Dr. Michiel. AR 180. Therefore the ALJ's reliance on Dr. Funkenstein's report is a specific and legitimate reason for rejecting Dr. Michiel's 2013 assessment. *Thomas*, 278 F.3d at 957 (The opinions of non-examining physicians may serve as substantial evidence when the opinions are "consistent with independent clinical findings or other evidence in the record."). Accordingly, the ALJ's assessment of the medical evidence is proper and is supported by substantial evidence.[4]

### B. The ALJ Properly Discredited Plaintiff's Subjective Complaints

#### *i. The ALJ's Findings*

When evaluating the Plaintiff's credibility the ALJ states as follows:

> The claimant is not entirely credible. She stopped working as her mother's home attendant when her mother passed away. This suggests her current unemployment may not be due to her alleged impairments. Her daily use of marijuana, and use of other illicit substances, as reflected above, further undermines her credibility.
>
> After careful consideration of the evidence, I find that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> The claimant has not sought nor received outside counseling for her mental health impairments. She was hospitalized briefly on a 5150 hold three-and-a half years ago. Beyond that, her treatment has consisted of psychotropic prescriptions from primary care physician. Radiological work shows the claimant has only mild scoliosis and no significant degenerative changes in her lumbar spine. Testing of her heart has shown no acute cardiopulmonary events, and no ischemic changes. In sum, the above residual function capacity assessment is supported by the objective medical evidence.

AR 22 (citations omitted).

///

---

[4] The Commissioner has argued that both Dr. Michiel's 2011 and 2013 medical opinions contain essentially the same objective findings and that the ALJ relied on Dr. Murrillo's non-examining medical opinion in rejecting Dr. Michiel's second evaluation. (Doc. 17 p. 6). However, the ALJ did not rely on these factors as part of her analysis and the Court is not permitted to accept *post hoc* explanations for the ALJ. *Lewin v. Schweiker*, 654 F.2d 631, 634 35 (9th Cir. 1981). A reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner. *Stout v. Comm'r*, 454 F.3d 1050, 1054 *citing Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

### ii. Legal Standard for Credibility Determination

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014). First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so. *Id.; Brown-Hunter v. Colvin,* 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight."). Factors an ALJ may consider include: 1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; 2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and 3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Work records, physician and third party testimony about the nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### iii. Analysis

In this case, following an in-person hearing, the ALJ found that Plaintiff's impairment can reasonably be expected to produce her alleged symptoms. AR 22. However, the ALJ concluded that the Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 22. This finding satisfied step on of the credibility analysis. *Smolen*, 80 F.3d at 1281-82.

As noted above, because the ALJ did not find that Plaintiff was malingering, she was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown –Hunter*, 806 F. 3d at 493; *Smolen*, 80 F.3d at 1283-84; *Lester*, 81 F.3d at 834. When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence. *Bunnell*

*v. Sullivan,* 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7.  Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  *Brown-Hunter*, 806 F. 3d at 493.

In discrediting Plaintiff's credibility, the ALJ relied on: (1) the objective medical evidence; (2) Plaintiff's failure to seek outside counseling for her mental health impairments; and (3) the evidence that Plaintiff ended her employment because her mother died, rather than because of a medical impairment.[5] AR 22.  These are clear and convincing reasons that are supported by substantial evidence.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ may consider lack of objective evidence in their credibility analysis); *Chaudhry v. Astrue*, 885 F.3d 661, 672 (9th Cir. 2012) (The ALJ may consider an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" in discrediting a claimant's credibility); *Burton v. Massanari*, 268 F.3d 824, 828 (9th Cir.2001) (as part of credibility assessment, the ALJ considered claimant's work history and his admission that he left his job for reasons other than his alleged impairment); *See also* 20 C.F.R. § 416.929 (objective medical evidence can be used in determining credibility; inconsistencies in evidence will support a rejection of credibility); SSR 96-7p (objective medical evidence is a useful indicator to assist in making a reasonable conclusion about credibility and the ability to function).

First, the ALJ correctly noted that a radiological report shows that Plaintiff has only mild scoliosis and no significant degenerative changes in her lumbar spine.  AR 22, 425.  In addition, the ALJ noted that testing of Plaintiff's heart has shown no acute cardiopulmonary events and no ischemic changes.  AR 22, 426.  "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."  *Burch*, 400 F.3d at 681.  The ALJ also noted that Plaintiff has not sought nor received outside counseling for her mental impairments.  AR 22. "[I]f a claimant complains about disabling pain but

---

[5] The ALJ noted that Plaintiff's daily use of marijuana and other illicit substances also undermined Plaintiff's credibility.  The Commissioner cites *Sherman v. Colvin*, 582 F. App'x 745, 748 (9th Cir. 2014), for the premise that this was a clear and convincing reason to find Plaintiff not credible.  However, in *Sherman,* the ALJ concluded that a claimant's marijuana use impacted his daily activities and motivation, rather than his credibility.  *Sherman,* 582 F. App'x at 748.  The Court need not determine whether rejecting Plaintiff's credibility based on her drug use was proper since the ALJ provided several other bases for her credibility determination.

1  fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such
2  failure as a basis for finding the complaint unjustified or exaggerated….” *Orn v. Astrue*, 495 F.3d
3  625, 638 (9th Cir. 2007) (citation omitted).  Finally, the ALJ noted that Plaintiff stopped working as
4  her mother's home attendant when her mother passed away.  AR 22.  The ALJ stated that this
5  suggested that Plaintiff's unemployment may not be due to her medical impairments. AR 22.  *See*
6  *Drouin v. Sullivan*, 966 F.2d 1255, 1259 (9th Cir.1992) (finding ALJ did not err in considering that,
7  "according to [the claimant's] own testimony, she did not lose her past two jobs because of pain").
8  A review of the record supports the ALJ's finding.  Plaintiff worked as a health aide for her mother
9  and has not worked since February 20, 2011, after her mother passed away.  AR 296, 358.  Plaintiff
10 subsequently alleges disability beginning February 21, 2011.  AR 292.

11       Given the above, the ALJ provided clear and convincing reasons outlined above that are
12 supported by substantial evidence to conclude Plaintiff's subjective symptom testimony was not
13 credible.  Here, the ALJ clearly identified what testimony she found not credible and what evidence
14 undermined Plaintiff's complaints.  *Brown-Hunter*, 806 F. 3d at 493; *Lester*, 81 F.3d at 834.  It is not
15 the role of the Court to re-determine Plaintiff's credibility de novo.  If the ALJ's finding is supported
16 by substantial evidence, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.
17 Although evidence supporting an ALJ's conclusions might also permit an interpretation more
18 favorable to the claimant, if the ALJ's interpretation of evidence was rational, as it was here, the
19 Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational
20 interpretation.  *Burch*, 400 F.3d at 680-81.  Accordingly, the ALJ's credibility determination was
21 proper.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision that the Plaintiff is not disabled as defined by the Social Security Act is supported by substantial evidence in the record as a whole, and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is **DIRECTED** to enter judgment in favor of Carolyn W. Colvin, the Commissioner of Social Security and against Plaintiff, Delphia Ray.

IT IS SO ORDERED.

Dated:   **March 11, 2016**                   /s/ Erica P. Grosjean
                                          UNITED STATES MAGISTRATE JUDGE